Presented to the Court by the foreman of the Grand Jury in open Court, in the presence of the Grand Jury and FILED in The U.S. DISTRICT COURT at Seattle, Washington.

DECEMBER 1, 2004
BRUCE RIFKIN, Clerk
By _____ Deputy

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KARIM ABDULLAH ASSALAAM,<br>ATTAWWAAB MUHAMMAD FARD,<br>ALI MUHAMMAD BROWN, and<br>HERBERT CHANDLER SANFORD,<br><br>Defendants. | NO. **CR04 0521C**<br><br>INDICTMENT<br><br>04-CR-00521-INDI |

The Grand Jury charges that:

## COUNT 1

(Conspiracy to Commit Bank Fraud)

A.  <u>The Offense</u>

1.   Beginning in or about January 2002 and continuing until November 18, 2004 within the Western District of Washington and elsewhere, KARIM ABDULLAH ASSALAAM ("ASSALAAM"), ATTAWWAAB MUHAMMAD FARD ("FARD"), ALI MUHAMMAD BROWN ("BROWN"), and HERBERT CHANDLER SANFORD ("SANFORD") and others known and unknown did knowingly and wilfully combine, conspire, and agree to devise and execute a scheme and artifice to defraud U.S. Bank, Bank of America, Key Bank, Washington Mutual Bank, Wells Fargo Bank, and Boeing Employees Credit Union, ("The Banks") all financial institutions as defined by Title 18, United States Code, Section 20, for the purpose of obtaining moneys, funds,

1  merchandise and credits under the custody and control of The Banks, by means of false
2  and fraudulent pretenses, representations and promises, in violation of Title 18, United
3  States Code, Sections 1344 and 2.
4  B.   Purpose of the Conspiracy
5    2.   The purpose of the conspiracy was to fraudulently obtain funds from The
6  Banks by:
7    a. Depositing counterfeit and fraudulent checks into the defendant's own
8  bank accounts and into other individuals' bank accounts with the knowledge and
9  assistance of the account holders and then withdrawing funds from these accounts
10 before the checks were returned as uncollectible; and
11   b. Purchasing cashier's checks in the names of individuals for whom the
12 defendants had obtained identification information, creating counterfeit cashier's checks
13 payable to the same individuals and then cashing the counterfeit cashier's checks
14 through the use of counterfeit identification documents in the name of the payee
15 appearing on the counterfeit cashier's checks.
16 C.   Manners and Means of the Conspiracy
17   3.   It was part of the conspiracy that individuals were recruited to facilitate the
18 scheme by, among other things, providing their bank cards and Personal Identification
19 Number ("PIN") numbers to defendants.
20   4.   It was further part of the conspiracy that the defendants would create
21 counterfeit checks purportedly drawn on legitimate commercial bank accounts.
22   5.   It was further part of the conspiracy that the counterfeit checks would then
23 be deposited into the defendants' own bank accounts or into the accounts of individuals
24 recruited to participate in the scheme.
25   6.   It was further part of the conspiracy that, after the counterfeit checks were
26 deposited into the defendant's or co-conspirator's bank account, funds were withdrawn
27 from these accounts, either via ATM withdrawals or point of sale transactions, before
28 the deposited checks were determined to be fraudulent.

7. It was further part of the conspiracy to create counterfeit identification documents containing a name of an individual for whom identification information had been obtained but bearing the photograph of another individual who was a member of the conspiracy.

8. It was further part of the conspiracy to create counterfeit cashier's checks in the individual's name appearing on the counterfeit identification documents and then a member of the conspiracy would cash these checks with the use of a counterfeit identification document.

D. **Overt Acts**

In furtherance of the conspiracy, the following overt acts were committed within the Western District of Washington and elsewhere by one or more conspirators:

1. Between on or about January 14, 2002, and on or about January 17, 2002, three counterfeit checks were deposited into ASSALAAM's bank account at Washington Mutual Bank.

2. Between on or about January 14, 2002, and on or about January 17, 2002, three counterfeit checks were deposited into FARD's bank account at Washington Mutual Bank.

3. On or about July 22, 2002, ASSALAAM recruited another individual ("CI-1") to participate in the conspiracy by providing CI-1's U.S. Bank bank card and PIN.

4. Between on or about July 22, 2002, and July 28, 2002, ASSALAAM deposited or caused to be deposited five counterfeit checks totaling $9,889 into CI-1's bank account.

5. Between on or about July 22, 2002 and July 28, 2002, ASSALAAM withdrew or caused to be withdrawn $7,424.68 from CI-1's bank account via ATM withdrawals or point of sale transactions.

6. On or about July 28, 2002, ASSALAAM provided $1,500 in cash to CI-1 as payment for the fraudulent use of CI-1's bank account.

7. On or about August 30, 2002, CI-1 provided a Key Bank bank card and PIN to FARD.

8. Between on or about February 27, and on or about February 28, 2003, four counterfeit checks drawn on the Union Bank of California account of "North Pacific Ins." were deposited into SANFORD's bank account at the Boeing Employees Credit Union.

9. On or about January 14, 2004, BROWN attempted to deposit a counterfeit check purportedly drawn on the Wells Fargo bank account of "Nurselink, Inc." at a Bank of America Branch in Kent, Washington.

10. On or about April 26, 2004, FARD attempted to obtain official bank stock paper from a Wells Fargo Bank teller, in University Place, Washington.

11. In or about May 2004, ASSALAAM traveled to Phoenix, Arizona, with another member of the conspiracy for the purpose of cashing counterfeit cashier's checks.

12. In or about late May or early June 2004, ASSALAAM, FARD, and BROWN went to SANFORD's apartment for the purpose of obtaining SANFORD's assistance in creating a counterfeit identification document for another member of the conspiracy.

13. On or about November 5, 2004, BROWN obtained a Wells Fargo Bank sheet of blank official bank check paper.

14. On or about November 18, 2004, SANFORD possessed identification information for numerous individuals, consisting of drivers licenses, employment applications, credit applications and insurance information.

15. On or about November 18, 2004, SANFORD possessed check stock paper, card laminate and glossy photographic paper.

16. On or about November 18, 2004, SANFORD possessed a photocopy of a check drawn on the Wells Fargo bank account of "Nurselink."

17. On or about November 18, 2004, FARD possessed two computers, three scanners, and check stock paper.

18. On or about November 18, 2004, FARD possessed two counterfeit cashier's checks each payable to "Chester George."

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2 THROUGH 9

(Bank Fraud)

1. Beginning in or about January 2002, and continuing until November 18, 2004, within the Western District of Washington and elsewhere, KARIM ABDULLAH ASSALAAM ("ASSALAAM"), ATTAWWAAB MUHAMMAD FARD ("FARD"), ALI MUHAMMAD BROWN ("BROWN"), HERBERT CHANDLER SANFORD ("SANFORD") and others known and unknown did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud U.S. Bank, Bank of America, Key Bank, Washington Mutual Bank, Wells Fargo Bank and Boeing Employees Credit Union ("The Banks") all financial institutions as defined by Title 18, United States Code, Section 20, and to obtain moneys, funds, and credits under the custody and control of The Banks, by means of false and fraudulent pretenses, representations and promises, as more particularly set forth in Count 1 of the Indictment, which is incorporated by reference as if fully set forth herein.

2. On or about the below-listed dates, within the Western District of Washington, for the purpose of executing and attempting to execute this scheme the defendant listed below conducted and caused to be conducted the below-listed transactions:

| COUNT | DEFENDANT | DATE | VICTIM BANK/ LOCATION OF TRANSACTION | TRANSACTION | AMOUNT |
|---|---|---|---|---|---|
| 2 | ASSALAAM FARD | 01/14/02 | Washington Mutual Bank/ Lynnwood, WA | Deposit of counterfeit check No. 1004 drawn on account of "RPS NW" | $3,191.00 |

| COUNT | DEFENDANT | DATE | VICTIM BANK/ LOCATION OF TRANSACTION | TRANSACTION | AMOUNT |
|---|---|---|---|---|---|
| 3 | ASSALAAM FARD | 01/17/02 | Washington Mutual Bank/ Lynnwood, WA | Deposit of counterfeit check No. 1009 drawn on account of "RPS NW" | $4,119.00 |
| 4 | ASSALAAM FARD | 12/09/02 | Bank of America/ Seattle, WA | Deposit of counterfeit check No. 981114 drawn on account of "CA Wholesale" | $ 995.95 |
| 5 | ASSALAAM FARD SANFORD | 02/27/03 | Boeing Employees Credit Union/ Seattle, WA | Deposit of counterfeit check No. 120999 drawn on account of "North Pacific Ins." | $1,701.01 |
| 6 | ASSALAAM FARD SANFORD BROWN | 01/14/04 | Bank of America/ Kent, WA | Attempted deposit of counterfeit check No.4853 drawn on account of "Nurselink, Inc." | $1,486.53 |
| 7 | ASSALAAM FARD SANFORD BROWN | 09/09/04 | Key Bank/ Tukwila, WA | Deposit of counterfeit check No. 1076629 drawn on account of "Westlake Financial Services" | $ 943.27 |
| 8 | ASSALAAM FARD SANFORD BROWN | 09/13/04 | Key Bank/ Tukwila, WA | Deposit of counterfeit check No. 1076649 drawn on account of "Westlake Financial Services" | $ 924.17 |
| 9 | ASSALAAM FARD SANFORD BROWN | 09/16/04 | Key Bank/ Kent, WA | ATM withdrawal | $ 300.00 |

3.   The offenses charged in Counts 2 through 9 were committed during and in furtherance of the conspiracy charged in Count 1.

All in violation of Title 18, United States Code, Sections 1344 and 2.

### CRIMINAL FORFEITURE ALLEGATION

Upon conviction of the offenses charged in Counts 1 through 9 above, KARIM ABDULLAH ASSALAAM ("ASSALAAM"), ATTAWWAAB MUHAMMAD FARD ("FARD"), ALI MUHAMMAD BROWN ("BROWN"), and HERBERT CHANDLER

1  SANFORD ("SANFORD") shall forfeit to the United States pursuant to Title 21, United
2  States Code, Section 853, and Title 18, United States Code, Sections 982(a)(2)(A) and
3  982(b)(1), any and all property, real or personal constituting or derived from any proceeds
4  the defendant obtained directly or indirectly as a result of said offenses, including, but not
5  limited to,

     a. a black four door, 1994 Lexus LS-400, VIN JT8UF11E5R0192544, Washington tag 654-HZS.

If any of the above-described forfeitable property, as a result of any act or omission of a defendant -

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third party;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the above-described property.

A TRUE BILL:

DATED: / DECEMBER 2004

Signature of Foreperson redacted pursuant to the policy of the Judicial Conference of the United States.
FOREPERSON

JOHN McKAY
United States Attorney

CARL BLACKSTONE
Assistant United States Attorney