```
 1              UNITED STATES DISTRICT COURT

 2         FOR THE WESTERN DISTRICT OF WASHINGTON

 3                     AT SEATTLE

 4  UNITED STATES OF AMERICA, )
                              )
 5           Plaintiff,        )
                              )   NO.  CR04-521C
 6           Vs.              )   Seattle, Washington
                              )   9:30 a.m.
 7  KARIM ABDULLAH ASSALAAM,   )   May 20, 2005
    & ATTAWWAAB MUHAMMAD FARD,)
 8                            )
             Defendant.        )
 9  _____

10      VERBATIM REPORTED PROCEEDINGS FOR SENTENCING

11       BEFORE THE HONORABLE JOHN C. COUGHENOUR
            UNITED STATES DISTRICT COURT JUDGE
12

13  APPEARANCES:

14  For the Plaintiff:    CARL BLACKSTONE, ESQ.
                          Assistant U.S. Attorney
15                        700 Stewart Street
                          Suite 5220
16                        Seattle, Washington 98101

17  For the Defendant:    PETER MAZZONE, ESQ.
                          Attorney at Law
18                        2910 Colby Avenue
                          Suite 200
19                        Everett, Washington 98201-4075
                          FOR:  KARIM A. ASSALAAM
20
                          LEE A. COVELL, ESQ.
21                        Attorney At Law
                          119 1st Avenue S
22                        Suite 500
                          Seattle, Washington 98104-3400
23                        FOR:  ATTAWWAAB MUHAMMAD FARD

24  U.S. Probation:       JAMIE HALVORSON

25
    Court Reporter:       LAURIE BRIGGS, RPR
```

1  (Defendants Present.)
2             THE CLERK:  Case No. CR04-521C, *United
3  States vs. Assalaam and Fard.*
4             THE COURT:  Counsel, which of you wishes to
5  go first?  All right.  Mr. Mazzone, has your client had
6  an opportunity to review and comment on the presentence
7  report?
8             MR. MAZZONE:  Yes, your Honor.
9             THE COURT:  All right.  Do you wish to be
10 heard?
11            MR. MAZZONE:  Yes, we do.  I'm not going to
12 take up too much of your time, Judge, but there is a few
13 things that you need to know about this case before you
14 hand down a punishment for Mr. Assalaam.  The facts are
15 that at the prodding of confidential informants he
16 started engaging in some fraudulent activity.
17 Essentially it was making out bad checks, putting them
18 in accounts and taking out money before the bank found
19 out about it.
20            It took no more than at least a couple of
21 dozen tries for confidential informants to get this
22 thing to happen.  Everybody got caught, and Karim
23 Assalaam was locked up.  After a big long song and dance
24 and negotiating with the prosecutor's office it was
25 decided that 8 to 14 months was the appropriate

1  sentence.  So we agreed to that.  It took a while to get
2  there.
3              There were four defendants involved all
4  together.  We were of the opinion that Mr. Assalaam
5  should get 8 months and be allowed to do two of those in
6  home detention.  The government's position, if I
7  understand it correctly, is that he do 12 months and do
8  it all at the Federal Detention Center.  That is the
9  difference here.  That is what we are arguing about.
10             There is a couple of things you should know.
11 One is that Mr. Assalaam, as I pointed out in my memo,
12 has three sick children.  Two of them suffer from Sickle
13 Cell Anemia.  One of them, who is present with his wife
14 in court today, has to have surgery in two months.
15             Ironically, the reason why he even got into
16 this mess was because he found himself alone having to
17 take care of his children in a desperate situation, and
18 he did what people often do when they find themselves in
19 desperate situations.
20             I have been at this business for a while,
21 and I see a lot of that.  Many of the people that come
22 in this court are probably not really bad criminals.
23 They are just desperate people that find themselves in
24 desperate situations.  Karim was one of those people.
25             So because of that, he now essentially made

1  a bad situation worse.  Since he has been in custody his
2  wife has had to take care of the child who needs the
3  operation by herself.  She has been evicted from her
4  home.  When I wrote the memo I didn't know if they were
5  going to be evicted.  In fact, today it was confirmed.
6  They have been evicted.  So they are now living with
7  friends.  So in determining whether or not we should
8  allow Karim Assalaam to serve 6 months, however you
9  slice it, at the FDC or as home detention, we should
10 keep that in mind.
11              Because one of the funny things that I just
12 got is the judgment and sentence that I need to look at
13 to see if I agreed with all these conditions.  And one
14 of the conditions is that the defendant shall support
15 his or her dependents and meet other family
16 responsibilities.  Now for crying out loud, how with we
17 on the one hand say he has to do those things as part of
18 the supervision but on the other hand we are going to
19 lock him up to make it worse for him to accomplish those
20 goals?
21              Another one of the conditions says that the
22 defendant shall work regularly at a lawful occupation.
23 Well, wait a minute.  How can we put that as one of the
24 conditions and on the other hand say we are going to
25 lock you up and make it worse for you so that you can't

```
 1   find a job when you get out?
 2               I'm here to tell you, as I told you in my
 3   memo, that he has a friend of his, Yusef Djuned, and I
 4   talked to him on the phone.  He said, "Mr. Mazzone, I
 5   can get Assalaam to work here.  I have a carpet cleaning
 6   business.  But I can only give him 5 to 10 hours a week
 7   right now because I wasn't expecting to have to hire to
 8   another person.  But maybe things will get better.
 9   Maybe things will improve and I will do the best I can."
10               If he were let out today he could start
11   doing that.  That at least can springboard him into
12   finding something.  I think we should keep that in mind
13   when we think about what we should do with a person who
14   has done some bad things because they found themselves
15   in a desperate situation.
16               THE COURT:  I got to ask, Mr. Mazzone.  Is
17   that an Everett accent?
18               MR. MAZZONE:  No, your Honor, it is not.  It
19   is actually Jersey City, New Jersey.  But, you know, the
20   idea of what we are doing sometimes is mind-boggling to
21   me.  I can understand a person who has committed some
22   violent, terrible act and we want to lock him up, and we
23   don't want to let him out.  We want to make sure the
24   community is safe.  Well, for crying out loud, what kind
25   of perverted thrill do get out of locking somebody up
```

1   for another 6 months -- when we know he is eligible for
2   home detention for that other 6 months -- what perverted
3   thrill do we get by doing that when we know that it is
4   going to make no difference in terms of if we really
5   want to punish them?
6              First of all, do they really deserve that
7   kind of punishment, and second of all, are we going to
8   accomplish that?  Are we going to accomplish that by
9   keeping him locked up for another six months so that
10  when they get out we ensure that they fail to support
11  their dependents and meet other family responsibilities
12  because we didn't give them a chance to start out with.
13  We are setting him up to fail.  I don't think that is
14  what we should be doing.
15             The other thing we should keep in mind that
16  I want you to keep in mind, this court to keep in mind,
17  is that we need to look at the character of the person.
18  I know you are going to hear bad things from Mr.
19  Blackstone, but I'm here to tell you that I know that
20  this guy 13 years ago was found guilty of, you know,
21  possession with intent to deliver some drugs.  I don't
22  know if it was a gram that was packaged in three little
23  packages or a pound.  It doesn't matter.
24             The point is that since that those 13
25  years -- that was in 1989.  It is now 2005.  He got out

1  in '91 for that.  He doesn't do drugs anymore.  And the
2  only thing you will find on his record is driving
3  without a valid license, for crying out loud.  It tells
4  me something about the man.
5          I got to know him.  We have had so many
6  arguments about what we should do about this case that
7  we got to a point at some point that we hated each
8  other.  But I'm here to tell you the guy has a lot of
9  character.  He comes from -- he is rough around the
10 edges, which is a testimony to his upbringing.
11         I know where he comes from.  I come from the
12 same place.  I got a chance.  He wants a chance.  I
13 don't know if you are going to give it to him or not,
14 but I tell you, he has heart.  I will tell you that what
15 he did he did because he was desperate.  And I tell you
16 a lot of the things that they are saying he did, he
17 didn't do.  And I will tell you that a lot of the things
18 that he did he did at the behest of confidential
19 informants.
20         I know that if it was a trial situation,
21 well, you know, we would have a tough time with the
22 entrapment thing because the standard is so high or low
23 depending on how you look at it.  But I'm telling you
24 right now, there were dozens of meetings with
25 confidential informants, dozens.  And they were all

1  trying to get him to do something not just him, him and
2  his brothers.
3           And so when we sentence someone we should
4  keep in mind exactly what it is that we are trying to
5  accomplish.  I hope that this court does that in this
6  particular case.  That is why in my memo I have
7  recommended that he serve the low end.  Because
8  ironically, if it wasn't for that conviction in 1989, he
9  wouldn't be even be a criminal history category 2.  He
10 would be a criminal history category 1.  And he would be
11 at 6 to 10.  And he would be in Zone B not Zone C, and
12 he should have only done a month.
13          Do we draw the line at whether -- well, you
14 know, it is 15 years really, and this happened when he
15 was his 14th year and 7th month.  Is that really what
16 justice is all about?  Usually when I come into this
17 building I think I'm going to get justice.  I want some
18 justice.  He wants some justice.  And --
19          THE COURT:  I might sentence him to have to
20 listen to your allocutions.
21          MR. MAZZONE:  Well, Judge, let me say this.
22 There are some times that you get quite excited about a
23 case and get passionate about a client and sometimes you
24 don't because you know you shouldn't because you know it
25 is not a worthy cause.  I'm here to tell you that this

1  is a worthy cause.
2           I have spoken to Karim's wife.  She said,
3  "Mr. Mazzone, I don't know what to say.  Say it for me
4  but tell them I want him back home."  So I'll tell you
5  that.  She wants him back home.  Her son, Shakur, is
6  going to have an operation in two months.  She is now
7  living --
8           THE COURT:  What is the nature of the
9  surgery?
10          MR. MAZZONE:  It is a gastrointestinal
11 problem that apparently has been ongoing.  This will be
12 yet another in a series of operations, and I can tell
13 you that Karim want to be there for that.  It is very
14 tough on her, on his wife, and she is now with friends
15 and going from house to house.  It is not right, Judge.
16 That's all I have to say, but I think I'll let Karim
17 tell you whatever he might want to tell you.  Thank you.
18          THE COURT:  All right.
19          MR. ASSALAAM:  How are you doing, Judge?
20          THE COURT:  I'm doing fine.  How are you
21 doing?
22          MR. ASSALAAM:  I just want to say that I
23 acknowledge that what I did was wrong.  And I feel and I
24 have in my heart remorse for anybody who I've harmed,
25 any financial institutions, especially myself and my

1  family, the harm that I caused to myself and my family.
2  I also have in my heart the firm conviction not to ever
3  do anything like that again.  And in order to help me be
4  successful at that I have a plan upon my release to go
5  to work for my Muslim brother at the janitorial service
6  and to do carpet cleaning.  That is what I plan to do as
7  far as financial base to take care of my family.
8         Like Pete already said, the reason I did it
9  is because I was in a desperate situation, and it was a
10 great burden on my shoulders and I really didn't know
11 how to handle it and I made a bad decision.  Since I
12 have been doing this time, these six months, I planned
13 and I plotted and I got my mind right and my heart ready
14 and I just ask you to release me to my family.
15         THE COURT:  All right.  Let me hear from Mr.
16 Covell and the other defendant, Mr. Fard, and then I'll
17 hear from the government.
18         MR. COVELL:  Good morning, your Honor.
19         THE COURT:  Good morning.
20         MR. COVELL:  I'm afraid I don't have Mr.
21 Mazzone's dramatic flair.  We are asking for a split
22 sentence of six months home detention and six months
23 imprisonment.  We believe that is supported by his
24 complete and truthful proffer.  Like his brother he also
25 has a family.  His wife and child are here present in

1  court this morning.  And we have indicated in our
2  memorandum their circumstances, her circumstances and
3  their need to have Attawwab home with them and back to
4  work.
5           Mr. Fard has looked into employment, and he
6  has several possibilities awaiting him.  He is a young
7  man with a lot of promise.  He is bright.  He has an
8  engaging smile, and I think he has a promising future.
9  He has learned a lot while he has been incarcerated
10 here, and I think he is on the right path.  But again,
11 we would submit that the substantial assistance that he
12 has already provided is such that he should receive a
13 split sentence of six months incarceration and six
14 months home detention.
15           THE COURT:  Let me hear from him.
16           MR. COVELL:  Yes, your Honor.  Mr. Fard?
17           MR. FARD:  How are you doing, sir?
18           THE COURT:  I'm doing fine.
19           MR. FARD:  I would like to say -- I just
20 wanted to say that I'm sorry for my criminal activities,
21 and I apologize to everyone that I have ever hurt and
22 especially my family, my wife.  And I never plan to
23 commit any type of crime ever again in my life.  I never
24 want to take my family through anything like this again.
25           I know that especially with me being Muslim

1  I have to set an example, a positive example, and that a
2  Muslim is not one to commit fraud.  It is a sin, and I
3  have turned to Allah in repentance for that sin and it
4  will never, ever happen again.  I made a promise to
5  Allah.  And you can hear me now as I promise that I will
6  never violate a law.  I will never knowingly and
7  willingly commit fraud again, ever.
8         I ask that you please forgive me and that
9  you allow me to go home to my family to help take care
10 of my wife and my son.  I feel like I have definitely
11 been punished enough.  And right now my wife really
12 needs me.  Her situation is very stressful and she has
13 no type of support except for my mother and government
14 assistance.  So I just ask that you forgive me and that
15 you give me an opportunity to take care of my family
16 again.  That is all.
17         THE COURT:  Mr. Blackstone?
18         MR. BLACKSTONE:  I will be brief, your
19 Honor.  Just to make the record clear, the confidential
20 informant had nothing to do with this scams.  This scam
21 began months, if not years, before the confidential
22 informant got in the picture.  Mr. Assalaam recruited a
23 number of folks from his church, from his community,
24 from his family.  He got them to give them their bank
25 cards.  He deposited phony checks into their accounts

1  and then withdrew money, shared the money with them and
2  kept the bulk for himself.
3              You know, in these bank fraud cases we tend
4  to only look at the banks as victims, but everybody that
5  gave them their bank cards could have been charged with
6  bank fraud.  We chose not to charge them.  Everybody who
7  gave them a bank card had their bank accounts closed and
8  their credit rating affected.  So there are real live
9  victims here besides the institutional victims.
10             Mr. Mazzone went on and on about how
11 horrible the government is and how we have done these
12 awful things.  I think we have been awfully lenient in
13 this case, your Honor.  For each one of the defendants
14 we have limited their loss to what they did.  I told the
15 FBI to stop digging.  Had they dug, I'm confident we
16 would have boosted that loss figure to double or triple
17 what it was.  We would have found a lot more people that
18 they recruited.  We cut the loss on a relatively low
19 figure, $60,000 for Mr. Assalaam and about $30,000 for
20 Mr. Fard.
21             Additionally, we chose not to charge them
22 with another offense that we could have.  Mr. Fard had a
23 phony passport in his possession.  I made a decision not
24 to charge him with that.  Mr. Assalaam had two guns in
25 his closet.  We could have charged him with being a

1  felon in possession of those guns.  We chose not to do
2  that.
3           On top of that we sat down with both of them
4  and we gave them an opportunity to cooperate and give us
5  a 5K.  The conclusion was they didn't have enough
6  information to rise to that level.  I think we have
7  pretty darn lenient with them.  And I think the
8  reason --
9           THE COURT:  Did you have any reason to
10 believe they were holding back?
11          MR. BLACKSTONE:  Mr. Fard, no.  Mr.
12 Assalaam, yes.  That is a personal opinion.  I can't
13 prove it to you, but it is a gut feeling based on about
14 15 years of doing this that he was not totally truthful.
15 Did he lie to me?  No.  I just think he didn't tell me
16 everything he knew for protecting family or friends.  It
17 is probably a noble reason.  But he was the one I was
18 hoping to get more information from and we didn't.  I
19 know Mr. Mazzone will disagree with me, but my gut was
20 that he was holding back, but not enough to get him
21 obstruction or anything like that.
22          Mr. Fard, I believed him.  I think he truly
23 is remorseful.  He is the only one that recognized that
24 what he was doing was contrary to his religion.  When I
25 first met him he said, "I recognize that this is a sin.

1  I recognize that I hurt people."  I believed him.  I
2  really do.  Maybe I have been misled.
3              The problem with Mr. Fard though -- the
4  reason I want the 12 months -- and I'm sure the Court
5  has its own opinions about what to do here -- is Mr.
6  Fard spent four or five years in an Oklahoma prison for
7  manslaughter.  He was on supervision for that charge,
8  and he turned to criminal activity.  He had a wife.  He
9  had a small child.  He should have thought about that.
10 My hope is that if you give enough of a sting here so
11 that he will never go back to criminal activity.
12             He still has to face the music in Oklahoma.
13 Oklahoma has a detainer on him.  They want him back for
14 a probation violation.  I told Mr. Covell and Mr. Fard
15 that I intend to write a letter to the Oklahoma
16 prosecutor and tell them that Mr. Fard has tried to
17 cooperate and argue for leniency in his behalf.  So even
18 if you give him a split sentence, he is on his way to
19 Oklahoma to face the music there.
20             So I think the 12 months' sentence here
21 might be beneficial to Oklahoma in the sense that you
22 could say, "Look, he got a year here.  Maybe give him
23 some credit or some concurrent time here."  So I'm not
24 trying to tell the Court what to do, but I think a year
25 sentence may be beneficial to him in Oklahoma.

1                    But with Mr. Assalaam, he is getting a
2    little old.  He is 36 years old.  He had the wife.  He
3    had the three kids.  He has made a lot of bad decisions.
4    And I think that I just want to get through to him that
5    you are not going to get just a slap on the wrist here.
6    You can't have guns anymore.  When you have pressure at
7    home you can't just turn to criminal activity.  I think
8    a 12 months' sentence here might get the message to him.
9                    I think it is unfortunate that his children
10   are sick.  It is unfortunate that they need him, but
11   these are decisions he should have made two years ago.
12   You know, he brought a lot of family and a lot of
13   friends into this scam, exposing all of them to criminal
14   liability.  So it is not just he is doing this to
15   support his family.  He was helping other people out as
16   well.  So we ask for the 12 months' sentence, but I'm
17   sure the Court will fashion a very fair sentence here.
18                    THE COURT:  Well, I want to compliment
19   counsel.  Despite having fun with you, Mr. Mazzone, you
20   did a nice job for your client.  I think the best way to
21   deal with this is -- if I give them the straight 12,
22   they get no credit for time, for good time.  And I think
23   that if I give them something like 10 months, they are
24   going to end up actually serving more than if I gave
25   them a year and a day with credit for time served.  So I

1  think what I will do is give them each 9 months, which
2  will make sure that they get some benefit from my
3  sentence, but it will be 9 months straight time with
4  credit for time served, of course.  So you will both be
5  out in a relatively short period of time.  As I
6  understand it you are close to 7 months now, right?
7              MR. MAZZONE:  It is about 6 months and a
8  day, your Honor.
9              THE COURT:  Okay.  Then as to Mr. Assalaam,
10 there will also be a period of supervised release
11 subject to the standard conditions, together with those
12 conditions set forth in the presentence report,
13 including restitution in the sum of $60,842.59.  I'm
14 waiving a fine due to the restitution obligation and the
15 defendant's financial and familial condition.  He will
16 be required to pay the special assessment for the count
17 of conviction.  The justification for the sentence is
18 that set forth in the presentence report together with
19 the Court's comments today.
20             As to Mr. Fard, the period of supervised
21 release will be three years subject to standard
22 conditions together with those additional conditions set
23 forth in the presentence report including a restitution
24 in the sum of $37,840.78.  I'm waiving a fine due to the
25 restitution and family obligations.  He will be required

1  to pay the special assessment for the count of
2  conviction.  The justification of the sentence is that
3  as set forth in the presentence report together with the
4  Court's comments today.
5           And gentlemen, you may have a right to
6  appeal these sentences.  If you wish to file a notice of
7  appeal, it must be filed within ten days of today.  If
8  you wish the assistance of an attorney in filing a
9  notice of appeal and cannot afford one, one will be
10 appointed to assist you if you so request.  If you wish
11 the assistance of the clerk in filing a notice of
12 appeal, she will assist you if you so request.  Do you
13 understand, Mr. Fard?
14          MR. FARD:  No, I missed you.
15          THE COURT:  All right.  Let me do it again.
16 You may have a right to file a notice of appeal.  If you
17 wish to file a notice of appeal, it must be filed within
18 10 days of today.  If you wish the assistance of an
19 attorney in filing a notice of appeal and cannot afford
20 one, one will be appointed to assist you if you so
21 request.  If you wish the assistance of the clerk in
22 filing a notice of appeal, she will assist you if you so
23 request.  Do you understand?
24          MR. FARD:  Yes.
25          THE COURT:  All right.  Mr. Assalaam, do you

```
 1  understand?
 2              MR. ASSALAAM:  Yes.
 3              MR. BLACKSTONE:  Your Honor, I have the
 4  judgment and sentence.  May I approach?
 5              THE COURT:  Yes.  Thank you, counsel.
 6              MR. BLACKSTONE:  One matter, your Honor.  On
 7  Mr. Fard there is an issue about forfeiture of a
 8  vehicle, and we have provided the court with --
 9              THE COURT:  I have signed it.
10              MR. BLACKSTONE:  Okay.  Thank you.
11              (Proceedings concluded 9:53 a.m.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                         CERTIFICATE
 2   STATE OF WASHINGTON    )
 3                          ) ss
 4   County of King         )
 5      I, the undersigned Notary Public in and for the State
 6   of Washington, do hereby certify:
 7      That the foregoing Verbatim Report of Proceedings was
 8   taken stenographically before me and transcribed under
 9   my direction; that the transcript is a full, true and
10   complete transcript of the proceedings, including all
11   questions, objections, motions and exceptions;
12      That I am not a relative, employee, attorney or
13   counsel of any party to this action or relative or
14   employee of any such attorney or counsel, and that I am
15   not financially interested in the said action or the
16   outcome thereof;
17      That I am herewith securely sealing this transcript
18   and delivering the same to the Clerk of the
19   above-entitled Court.
20      IN WITNESS WHEREOF, I have hereunto set my hand and
21   affixed my official seal this 30th day of December,
22   2005.
23                   /S/LAURIE BRIGGS_____
24                   Notary Public in and for the State
25                   of Washington, residing at Issaquah.
```